[Cite as *Botello v. Gonzalez*, 2025-Ohio-1390.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| YOLANDA FERNANDEZ BOTELLO | : | |
| | : | |
| Appellant | : | C.A. No. 2024-CA-78 |
| | : | |
| v. | : | Trial Court Case No. 23-DR-0033 |
| | : | |
| SAUL MENDEZ GONZALEZ | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on April 18, 2025

. . . . . . . . . . .

LOUIS E. VALENCIA,II, Attorney for Appellant

SAUL MENDEZ GONZALEZ, Pro Se Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Yolanda Fernandez Botello appeals from a judgment of the Clark County Common Pleas Court, Domestic Relations Division, which dismissed her complaint for divorce upon finding that she had failed to establish subject matter jurisdiction and her grounds for divorce. For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded for the trial court to timely issue a final

judgment and decree of divorce in Botello's action.

## I. Facts and Procedural History

{¶ 2} According to the complaint, Botello married Saul Mendez Gonzalez in Springhill, Ohio, on August 16, 2004, and they had a child together in 2005. The couple separated in September 2006. They had lived together in Ohio during their marriage.

{¶ 3} On February 3, 2023, Botello filed a complaint for divorce. As grounds for divorce, she alleged "willful absence of the Defendant for more than one year, adultery and gross neglect of duty and thereby the parties are incompatible."

{¶ 4} When the complaint was filed, Botello resided in Medway, Ohio, and she alleged that she had been a resident of Ohio for at least six months and of Clark County for at least 90 days immediately prior to the filing of the complaint. The paperwork Botello submitted with her complaint included copies of birth certificates for her other two children, who were born in 2010 and 2013; these two children were unrelated to Gonzalez. Both birth certificates noted that Botello had been born in Mexico but that she then lived in New Carlisle, Ohio.

{¶ 5} Along with her complaint for divorce, Botello requested a Spanish interpreter for all scheduled hearings.

{¶ 6} Botello sought service by publication on her husband, which the trial court approved. Gonzalez did not file any responsive pleading. The matter then was scheduled for a final uncontested hearing on October 26, 2023. Immediately prior to the hearing, the trial court met with Botello's counsel off the record "and inquired as to whether the Plaintiff is, in fact, a lawfully documented immigrant." Dismissal Entry, p. 2 (Mar. 12,

2024).   According to the trial court, Botello's counsel answered in the affirmative but was unable to provide the court with the proper documentation at that time.   *Id.*   As a result, the trial court decided to continue the hearing until it had determined that it had proper jurisdiction to proceed with the case.

{¶ 7} On January 18, 2024, Botello's attorney contacted the administrator of the trial court to request a final uncontested divorce hearing date.   On January 22, 2024, the trial court issued an order finding that it was "appropriate to obligate Plaintiff's counsel" to provide the court with documentation showing that Botello was "a <u>properly documented</u> immigrant which would then make her eligible to be a bona fide resident of the state of Ohio for at least six months, as required by O.R.C. 3105.03."   (Emphasis in original.)   Entry, p. 1-2 (Jan. 22, 2024).   The trial court scheduled a final uncontested divorce hearing for March 7, 2024, but ordered counsel to provide "the appropriate documentation at least one week prior to the final hearing."   It warned that "[f]ailure to provide such documentation may result in a dismissal of the within matter, for lack of jurisdiction."

{¶ 8} Although no documentation was provided, a final evidentiary hearing was held on March 7 as scheduled.   However, the court dismissed the case without any testimony.   It expressed that it did not "believe I have jurisdiction to proceed in this case if your client is not in this country lawfully, and you're not prepared to provide me, you're not willing to provide me with that information that I have requested to determine if I have jurisdiction."   Mar. 7, 2024 Tr. 8-9.

{¶ 9} In its March 12, 2024 dismissal entry, the trial court explained that Botello's request for a Spanish interpreter along with the documents that showed she had been

born in Mexico in 1982 made it "logical and necessary for this Court to inquire as to [her] immigrant status." The court further expressed its opinion that "an undocumented immigrant who is presently in this county without proper legal authority is unable to satisfy the six month Ohio residency requirement which was enacted by the Ohio legislature on January 1, 1991." Because Botello's legal residency was not established, the court dismissed the case for lack of jurisdiction.

{¶ 10} Botello appealed the trial court's dismissal of her divorce action, claiming that the trial court had erred in two respects: (1) by dismissing the action for lack of jurisdiction under R.C. 3105.03 based on her immigration status, and (2) by applying its own interpretation of R.C. 3105.03 when the language was unambiguous. Upon review, we found that the trial court had erred in interpreting R.C. 3105.03 such that it "add[ed] a duty on Botello to also establish her immigration status." *Botello v. Gonzalez*, 2024-Ohio-3210, ¶ 14 (2d Dist.) (*Botello I*). We reasoned that neither R.C. 3105.03 nor *Barth v. Barth*, 2007-Ohio-973, the authority that the trial court had relied upon, supported the trial court's action. Rather, "[t]he plain language of R.C. 3105.03 required the trial court to simply determine whether Botello was an Ohio resident for six months immediately before she filed the complaint for divorce." *Botello I* at ¶ 14. We continued:

> While not stating as much and not citing any authority for doing so, the trial court appears to have dismissed Botello's divorce action out of some sort of deference to the federal immigration laws. Notably, several of the highest courts in other states have resoundingly rejected such an approach. We agree with these courts. As noted above, the General Assembly's

power over the entire subject of marriage, including divorce, is unlimited except as restricted by the Ohio and United States Constitutions. The General Assembly enacted R.C. 3105.03 as part of this power. We see nothing in the Ohio or United States Constitutions, or in R.C. 3015.03, that required Botello to prove her immigration status before the trial court could exercise its subject matter jurisdiction over her complaint for divorce.

(Citations omitted.) *Id.* at ¶ 15. We thus sustained Botello's assignments of error and remanded for the trial court to proceed with the final evidentiary hearing on her complaint for divorce.

{¶ 11} Upon remand, the trial court scheduled a final uncontested divorce hearing for October 17, 2024. Botello appeared and testified on her own behalf, and she called her cousin as a corroborating witness; Gonzalez did not appear.

{¶ 12} According to Botello's testimony, she married Gonzalez on August 16, 2004, in Springhill, Ohio, and together they have a son, who was born in 2005. The two separated on September 16, 2006. She has since had two children, in 2010 and 2013, with her current paramour. Botello indicated that she and Gonzalez had already divided their personal and marital goods, there were no marital assets or debts to divide, and she was not seeking any support. Botello testified that she had been a resident of Ohio for at least six months prior to the filing of the action and had been a resident of Clark County for at least 90 days prior to filing the action; she provided her address in Medway, Ohio. She asked the court to grant her a divorce

{¶ 13} After her attorney completed his direct examination, the trial court indicated

that it had some questions, and it told counsel that it would provide him an opportunity to advise Botello about whether she should answer any of them. The court asked counsel to provide an explanation any time he advised Botello not to answer.

**{¶ 14}** The court then asked Botello a series of questions during which Botello confirmed that she did not speak English, that she has resided in Clark County since 2003, and that she intended to make Ohio her permanent home. On the advice of her counsel, Botello did not answer the trial court's questions about where she lived before moving to New Carlisle in 2003, how long she had resided in the United States, whether she was a lawful United States citizen, and whether she had any documentation authorizing her to live in the United States or the state of Ohio. Counsel objected to the relevance of those questions, citing our opinion in Botello's first appeal. At one point, the trial court asked:

> THE COURT: If it is your intention to make Ohio a permanent home and if you've lived in the State of Ohio since at least 2003, that means you've lived here 21 years, and yet you're declining to show any documentation showing that you're authorized to be here and you don't speak or understand English, correct?
>
> THE WITNESS: Correct.
>
> THE COURT: But despite these two facts, you intend to make Ohio a permanent home, correct?
>
> THE WITNESS: Correct.

Oct 17, 2024 Tr. 12. When the court asked Botello why she had not learned "the native

language of the country in which you intend to make your permanent home," counsel objected on the grounds that the court was badgering the witness. He argued that there was no law making English the country's official language and emphasized that "[t]here are many, many individuals, hundreds of thousands of individuals that live in this country that do not speak English and are not required to." On the advice of counsel, Botello did not answer that question either.

{¶ 15} The court also asked Botello about her contact with her husband. Botello testified that the address she had listed for Gonzalez in her complaint (a city in the Mexican state of Michoacán) had been provided by Gonzalez's father. Botello testified that she last had contact with Gonzalez around 2008. She had obtained the address from her father-in-law for the purpose of trying to serve Gonzalez with the divorce complaint.

{¶ 16} Botello's cousin testified that she had known Botello her entire life, had heard Botello's testimony, and to the best of her knowledge, Botello's testimony was true and accurate.

{¶ 17} On November 6, 2024, in a written decision, the trial court again dismissed Botello's complaint for divorce. The trial court initially stated that our prior decision did not hold that the trial court had jurisdiction but, rather, held that the court erred in dismissing the matter without first conducting an evidentiary hearing. The trial court cited several Ohio cases regarding the burden of the plaintiff to prove residence and that the trial court must examine the facts and circumstances to determine whether an individual actually has the intent to make Ohio their permanent home. As to this issue, the trial

court found persuasive a Ninth Circuit case, *Park v. Barr*, 946 F.3d 1096, 1098 (9th Cir. 2020), which held that a B-2 nonimmigrant whose lawful status had lapsed was precluded from establishing lawful domicile in California by operation of federal law.

{¶ 18} The trial court concluded that it lacked jurisdiction over Botello's action. The court stated that Botello's immigration status was relevant to her intention to make Ohio her permanent home, and it found that her silence in response to questions regarding her immigration status "support[ed] a legitimate adverse inference" concerning her claim that she had resided in the state of Ohio for at least six months and in Clark County for more than 90 days. The court continued:

> It also supports this Court's finding, at this time, that she does not have currently or has ever had lawful documentation authorizing her to reside in the state of Ohio or, for that matter, in the United States. Further, her silence supports a legitimate adverse inference that she does not truly intend to retain the state of Ohio as her permanent residence, despite her testimony to the contrary.

The court further found that Botello's testimony regarding the length of her residency in Ohio and Clark County "is simply not credible." The court explained, "Just because the Plaintiff expressed such an intent does not mean that she actually possesses it and in this case, the Court finds that she does not."

{¶ 19} As for Botello's grounds for divorce, the trial court stated that "Plaintiff never testified whether there was any 'willful' absence nor did she testify whether the parties' reconciled or cohabitated thereafter. To this end, Plaintiff's counsel never asked her to

elaborate concerning this issue. When the absence is not intentional or by choice, then the absence is not willful as required by Statute." The court acknowledged that Botello had testified that she had last had contact with Gonzalez "around 2008", but it found her testimony also to be not credible. The court disregarded the testimony of Botello's corroborating witness, stating that she did not provide testimony pursuant to her "personal knowledge."

{¶ 20} Botello appeals from the trial court's judgment, raising three assignments of error.

## II. Botello's Immigration Status

{¶ 21} In her first assignment of error, Botello claims that the trial court erred in dismissing her divorce action for lack of jurisdiction. She asserts that the court ignored *Botello I*, controlling precedent, and the doctrine of stare decisis by adding an immigration status requirement to R.C. 3105.03. Botello's second assignment of error further claims that the trial court erred in finding that her silence in response to its questions concerning her immigration status and English language skills supported "a legitimate adverse inference" concerning whether she resided in Ohio for at least six months and in Clark County for more than 90 days before filing her complaint for divorce.

{¶ 22} R.C. 3105.03 governs residency requirements for divorce actions in Ohio. It requires the plaintiff in a divorce action to "have been a resident of the state at least six months immediately before filing the complaint." In addition, the action must be brought in the proper county for commencement of an action pursuant to the Rules of Civil Procedure. *Id.*

{¶ 23} As we noted in *Botello I*, the Ohio Supreme Court has held that R.C. 3105.03 "is clear: in order to file for divorce in Ohio, the plaintiff must have been an Ohio resident for six months immediately before the filing of the complaint. Therefore, the statute must be applied strictly and without interpretation." *Botello I* at ¶ 11, citing *Barth*, 2007-Ohio-973, at ¶ 11. The word "resident" in R.C. 3105.03 means "one who possesses a domiciliary residence, a residence accompanied by an intention to make the state of Ohio a permanent home." *Id.*, citing *Coleman v. Coleman*, 32 Ohio St.2d 155, 162 (1972). We further recognized that, "[i]n a divorce action, a plaintiff's domicile is a question of intent and the plaintiff's representation will be accepted unless facts and circumstances indicate that the plaintiff's claimed intent cannot be accepted as true." *Botello I* at ¶ 12, citing *Holtz v. Holtz*, 2006-Ohio-1812, ¶ 19.

{¶ 24} In reversing the trial court in *Botello I*, we noted that the trial court had concluded "that an undocumented immigrant who is presently in this country without proper legal authority is unable to satisfy the six month Ohio residency requirement which was enacted by the Ohio legislature on January 1, 1991." *Id.* at ¶ 13 (quoting the first dismissal entry). We held that the trial court erred in "interpreting" R.C. 3105.03 in such a way as to add a duty on Botello to also establish her immigration status. *Id.* at ¶ 14. Our opinion did not simply hold that the trial court erred by dismissing Botello's complaint without holding an evidentiary hearing, as the trial court maintained. Rather, we held that the trial court erred in its interpretation of R.C. 3105.03 when it required Botello to present evidence regarding her immigration status.

{¶ 25} Upon remand, the trial court acknowledged that it was not free to disregard

the directives of this Court. At the same time, it reiterated its belief that an undocumented immigrant cannot, by operation of law, comply with Ohio's residency requirement for purposes of obtaining a divorce. Indeed, the court stated in its recent dismissal decision that Botello's "immigration status [was] relevant as it relates to the issue of her 'intention'." With that apparent understanding of Ohio law, the trial court questioned Botello about where she had lived prior to moving to New Carlisle in 2003, how long she had resided in the United States, whether she was a lawful United States citizen, whether she had any documentation authorizing her to live in the United States or the state of Ohio, and why she had not learned to speak English despite living in Ohio for more than 20 years. The trial court expressly found that Botello "does not have currently or has ever had lawful documentation authorizing her to reside in the state of Ohio or, for that matter, in the United States."

{¶ 26} The trial court's continued focus on Botello's immigration status directly contradicted our holding in *Botello I* that the trial court could not require Botello to establish her immigration status for purposes of R.C. 3105.03. Although we rejected an approach that grafted federal immigration laws onto residency in divorce actions, Botello's immigration status was central to the trial court's analysis of whether she had the "intent" to be domiciled in Ohio. The trial court thus failed to follow the law of the case, and it erred in considering information related to Botello's immigration status in concluding that it lacked jurisdiction over Botello's divorce action. Botello's first assignment of error is sustained.

{¶ 27} We further conclude that the trial court erred in finding that Botello's failure

to answer questions regarding her immigration status and English language abilities permitted an adverse inference concerning her residency in Ohio and Clark County. Those questions were not relevant to Botello's residency for purposes of R.C. 3105.03, and her failure to answer them, on the advice of counsel, should have played no role in the trial court's decision. Botello's second assignment of error is also sustained.

### III. Factual Findings

{¶ 28} Botello's third assignment of error claims that the trial court erred and abused its discretion "by failing to exercise sound, reasonable, and legal decision-making in reaching its arbitrary conclusion that Plaintiff's testimony was not credible to establish the residency requirement in R.C. § 3105.03 and a grounds for divorce under R.C. § 3105.01."

### A. Botello's Domiciliary Residence

{¶ 29} The plaintiff in a divorce action has the burden of proving domiciliary residence by a preponderance of the evidence. *Freels v. Powers-Freels*, 2015-Ohio-3915, ¶ 9 (2d Dist.). "The fact of residence in a location is *prima facie* evidence of domicile there, but is rebuttable by proof to the contrary." *Id.* However, an intention to make a permanent home is known only by the individual concerned and is, therefore, largely a subjective determination. *Id.*, citing *Coleman*, 32 Ohio St.2d 155 (1972).

{¶ 30} A trial court's decision as to whether it has jurisdiction is a legal determination, which is reviewed on appeal de novo; its weighing of the evidence as to a party's intent to establish a domiciliary residence in the state is a factual question, which we review for an abuse of discretion. *Freels* at ¶ 13. To constitute an abuse of

discretion, a trial court's action must be arbitrary, unreasonable, or unconscionable. *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 232 (1984).

{¶ 31} When reviewing factual findings, an appellate court "must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21. Because the trier of fact sees and hears the witnesses, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *Stump v. Hoagland*, 2015-Ohio-2434, ¶ 7 (2d Dist.), citing *Seitz v. Harvey*, 2015-Ohio-122, ¶ 41 (2d Dist.). However, an appellate court is not required to accept a trial court's factual finding if it is clearly erroneous. *See, e.g., State v. Garrett*, 2022-Ohio-4218 (because the third prong of a *Batson* analysis turns largely on an evaluation of credibility, a trial court's finding of no discriminatory intent will not be reversed unless clearly erroneous).

{¶ 32} In this case, the trial court found that Botello was not credible. It stated that Botello's "claimed intent cannot be accepted as true, taking into account the facts and circumstances surrounding this litigation. Just because the Plaintiff expressed such an intent does not mean that she actually possesses it and in this case, the Court finds that she does not."

{¶ 33} While we generally are required to defer to such a finding, the trial court's findings appear to be tainted by its focus on Botello's immigration status and her inability to speak English, the so-called "facts and circumstances surrounding the litigation." Putting those considerations aside, it is apparent that Botello satisfied the residency requirement of R.C. 3105.03. Botello's testimony established that she and Gonzalez

married in Ohio in 2004, and they resided together in Ohio until the couple separated in 2006. Botello's two younger children were born in New Carlisle, Ohio in 2010 and 2013. Botello testified that she has resided in Clark County since 2003 – more than half of her life - and that she intended to make Ohio her permanent home. The facts that Botello married in Ohio, bore children in Ohio, raised children in Ohio, and actually lived in Ohio for more than 20 years strongly supported her testimony that she lived in Ohio with the intention of making it her permanent domicile. No relevant evidence was offered to contradict Botello's testimony. This case thus presents the rare circumstance where we conclude that the trial court's credibility finding was clearly erroneous and its conclusion that she failed to prove a domiciliary residence in Ohio was an abuse of discretion.

## B. Grounds for Divorce

{¶ 34} A common pleas court may grant a divorce for one of several causes, including willful absence of the adverse party for one year (R.C. 3105.01(B)), adultery (R.C. 3105.01(C)), any gross neglect of duty (R.C. 3105.01(F)), and incompatibility, unless denied by either party (R.C. 3105.01(K)).

{¶ 35} A trial court has broad discretion in determining the proper grounds for a divorce, and a reviewing court will not reverse that determination absent a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Tedrow v. Tedrow*, 2003-Ohio-3693, ¶ 23 (11th Dist.). "However, a trial court's decision denying a divorce to parties, who have lived separate and apart for more than one year without cohabitation or when incompatibility is not disputed, should be rendered only in the rare case where the evidence clearly warrants it." *Id.*

{¶ 36} In this case, Botello testified that she and Gonzalez had separated in 2006, had divided their personal property, and had no marital assets or debts to divide. She indicated that she last had contact with him around 2008. Since that time, Botello had two children with someone else, with whom she continued to be in a relationship. She indicated that she had obtained the Michoacán address from Gonzalez's father for the purpose of filing the divorce action and serving Gonzalez. The record reflects that Gonzalez was ultimately served by publication.

{¶ 37} Gonzalez did not appear in the action and did not contest Botello's allegation in her complaint that they had lived separately and apart without cohabitation since they separated in 2006. There is no evidence to suggest that Botello's testimony was untruthful. If believed, Botello's evidence supported conclusions that Gonzalez had been willfully absent for more than one year and that they were incompatible.

{¶ 38} Again, the trial court's finding that Botello was not credible appears to stem entirely from her failure to address his concerns about her immigration status. For the reasons stated above, we conclude that the trial court's credibility finding was clearly erroneous and its conclusion that she had failed to establish a ground for divorce was an abuse of discretion.

{¶ 39} The trial court further found Botello's supporting witness, her cousin, to be not credible due to lack of personal knowledge. Ohio law requires a plaintiff seeking a divorce to provide corroborating evidence. Civ.R. 75(M) ("Judgment for divorce, annulment, or legal separation shall not be granted upon the testimony or admission of a party not supported by other credible evidence."). However, only some of the evidence

supporting a plaintiff's complaint for divorce needs to be corroborated. *Smith v. Smith*, 1985 WL 7665, * 1 (2d Dist. Feb. 27, 1985).

> Historically, the reason for the rule requiring corroboration was to avoid collusive divorce actions. Consequently, even though that reason for the rule is now somewhat vestigial in view of the availability of dissolution by agreement of the parties, the corroborating evidence does not have to be a complete corroboration of each and every material fact testified to by the plaintiff, but must merely substantiate the testimony of a party, without necessarily supporting it in every detail, since many private details concerning the grounds for divorce are within the exclusive knowledge of the parties themselves. The corroborating evidence may be either parol or documentary, or both.

(Citations omitted.) *Taylor v. Taylor*, 1989 WL 65309, *2 (2d Dist. June 7, 1989) (addressing former Civ.R. 75(L)).

{¶ 40} In this case, Botello called her cousin as a supporting witness. The cousin testified that she lived in New Carlisle, had known Botello her entire life, and had heard Botello's testimony at the final divorce hearing. When asked, "To the best of your knowledge is everything that she said true and accurate?" the cousin responded, "Yes." Botello's cousin was not asked to elaborate or provide specific details. The trial court found that the cousin's testimony was not based on personal knowledge. It further concluded that her evidence was insufficient, citing *Widdowson v. Widdowson*, 1985 WL 6950 (2d Dist. Oct. 17, 1985), in which we held that, without more specific testimony, the

plaintiff's witness's testimony was insufficient to prove gross neglect of duty and extreme cruelty. (Incompatibility had not yet been added to R.C. 3105.01 as a grounds for divorce.)

{¶ 41} We disagree with the trial court that Botello failed to present corroborating evidence. Although the better course may have been to provide some additional details, Botello's cousin lived in Clark County and had known Botello her entire life, lending support to a conclusion that she had personal knowledge of the relationship between Botello and her husband. Moreover, Botello had testified that she has had two children with her current paramour since separating from her husband. This was substantiated by the children's birth certificates, which the trial court had referenced and asked her about. Botello's bearing and raising children with another man supported a finding that the parties were incompatible, one of her alleged grounds for divorce. In addition, Gonzalez neither responded to the complaint nor appeared at the final hearing to contest Botello's alleged grounds for divorce. Accordingly, the trial court abused its discretion in concluding that Botello had not established or presented any corroborating evidence supporting a ground for divorce.

{¶ 42} Botello's third assignment of error is sustained.

## IV. Conclusion

{¶ 43} The trial court's judgment will be reversed, and the matter will be remanded for the trial court to timely issue a final judgment and decree of divorce.

. . . . . . . . . . . . .

LEWIS, J. and HANSEMAN, J., concur.